IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KARLA MARIE L.

    *Plaintiff,*

vs.

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,

    *Defendant.*

Case No. 18-CV-02699-EFM

**MEMORANDUM AND ORDER**

    Plaintiff seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"),[1] denying her claim for disability insurance benefits under Title II of the Social Security Act. Plaintiff alleges that the administrative law judge ("ALJ") who reviewed her application erred (1) in making a decision based on an incomplete record, (2) in failing to properly assess Plaintiff's pain and mental impairments, and (3) in failing to properly assess Plaintiff's residual functional capacity ("RFC"). Having reviewed the record, and for the reasons explained below, the Court affirms the Commissioner's decision.

---

[1] Plaintiff brought her claim against the former commissioner, Nancy Berryhill. Andrew Saul now holds this position and is automatically substituted as a party in place of Berryhill. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

## I. Factual and Procedural Background

### A. Plaintiff's medical history

Plaintiff was born on November 12, 1969. She possesses an associate degree in accounting and has performed past work as a self-employed tax preparer. Plaintiff ceased working entirely in May 2012. Plaintiff avers that she was unable to continue working due to the following medical conditions: back pain, advanced degenerative disc disease cervical and lumbar spine, back surgery, migraines, fibromyalgia, mood disorder, borderline personality disorder, anxiety disorder, sleep disorder, and hypertension. Most prominently, Plaintiff complains of chronic back pain stemming from a car accident that occurred in either 2004 or 2008. Plaintiff began taking prescribed narcotics for her pain no later than 2012. In August 2012, Plaintiff received treatment for her pain from Tiffany Williams, M.D., who eventually supplied a medical opinion on Plaintiff's behalf.

In November 2013, Plaintiff was involved in another car accident where she suffered additional injuries to her back and shoulder. Following the accident, Plaintiff was seen and treated by neurosurgeon John Clough, M.D., who performed a T12–L2 fusion surgery on Plaintiff in March 2014. In April 2014, Mark Humphrey, M.D. reported that Plaintiff's back, while still in a brace, had sufficiently improved for her to finish physical therapy on her shoulder. In November 2014, Plaintiff received an MRI that showed stenosis of the lumbar spine; however, insurance required that she attempt non-surgical medical solutions before it would approve any additional surgical procedures.

In April 2015, Plaintiff sought emergency care for her back pain. Plaintiff was treated by John McEnroe, M.D. During her visit, Plaintiff reported that her normal chronic back pain had become increasingly worse over the previous three days. Dr. McEnroe noted that Plaintiff had taken Percocet and Oxycontin to address the pain. Dr. McEnroe observed that Plaintiff's gait and

station were normal and that Plaintiff's back had full range of motion. Plaintiff was released from the hospital the following day when her pain returned to its baseline levels. Dr. McEnroe instructed Plaintiff to not "do any heavy lifting or bending." But he also instructed that she could return to normal activities as long as they did not aggravate her pain.

Throughout 2015, Plaintiff reported to several doctors that she was suffering from back pain. For example, in February, Linden Collins, M.D. saw Plaintiff for a well-woman exam. Dr. Collins stated that Plaintiff was positive for back pain and negative for myalgias. In May, Plaintiff reported to Patricia Fitzgibbons, M.D., her primary care provider, that she was suffering back pain. Dr. Fitzgibbons stated that Plaintiff was positive for back pain and arthralgias but negative for myalgias. In June, Plaintiff was seen by Richelle Winton, ARNP for radiating lower back pain. Plaintiff denied any weakness or numbness. Winton noted that Plaintiff had a normal station and gait. She also noted Plaintiff had limited range of motion in her back and spinal tenderness.

In August 2015, Plaintiff visited the Headache and Pain Center for her low back pain. At her first visit, Plaintiff reported that her pain was an 8/10 on the pain scale. Plaintiff's physician observed that Plaintiff had some tenderness, spasms, reduced range of motion in her back, and a mildly antalgic gait but a normal station. When Plaintiff returned to the Headache and Pain Center in September, she reported a lower pain level of 4 or 5 out of ten. She also reported reduced tenderness and other mild improvements. Plaintiff indicated that she planned on having an additional corrective surgery with Dr. Clough once insurance approved the procedure.

In October, Dr. Fitzgibbons stated that Plaintiff was positive for back pain and myalgias, and she "exhibited tenderness over spinous process in thoracic and lumbar vertebra."

In December 2015, Plaintiff visited with her neurosurgeon, Dr. Clough. Because Plaintiff's most recent MRI was more than six months old, Dr. Clough ordered an MRI for surgical planning

purposes. Plaintiff returned to review the MRI results with Dr. Clough in February 2016. The MRI showed degenerative changes in Plaintiff's lumbar spine that collectively produced "moderate central canal stenosis with a central clumping [] on the nerve roots." In May 2016, Dr. Clough performed a surgical decompressive laminectomy. Following surgery, Dr. Clough instructed Plaintiff not to lift, push, or pull more than 10 pounds. but Dr. Clough advised Plaintiff to increase her activity as tolerated.

In September 2016, state agency physician Denise Trowbridge, M.D. reviewed the medical records and opined that Plaintiff could lift ten pounds, could walk or stand for two hours with normal breaks, could sit for six hours in an eight-hour workday with normal breaks, and could occasionally stoop, kneel, balance, crouch, crawl, and walk stairs. Dr. Trowbridge's opinion is consistent with Plaintiff being able to perform a range of sedentary work. Another state agency physician, Donald Shumate, D.O. reviewed the medical records and reached the same conclusions.

In addition to her physical pain, Plaintiff also has a history of treatment for mental health disorders. From December 2013 through August 2014, Plaintiff was treated by psychiatrist Christine Mensch, M.D. who diagnosed Plaintiff with major depression in partial remission, anxiety, borderline personality disorder, and alcohol use in early remission. Additionally, from June 2014 to September 2017, Plaintiff received ongoing mental health therapy through Southeast Kansas Mental Health Center from Jeffrey Phillips, LMLP, and Nicole Olsen, LCP. Finally, between August 2015 through February 2016, Plaintiff also received treatment from psychiatrist Karen Dhanens, M.D.

**A.     Plaintiff's first application for insurance disability benefits**

In September 2012, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act ("SSA"), alleging a disability beginning on May 8, 2012. In October 2012,

Plaintiff filed a separate application for supplemental security income under Title XVI of the SSA. Both applications were denied initially and upon reconsideration. Thereafter, Plaintiff filed a written request for a hearing before an ALJ. On June 16, 2014, ALJ James Harty presided over the hearing.

On October 9, 2014, ALJ Harty issued his ruling that Plaintiff was not disabled, as defined in the SSA, from May 8, 2012, through the date of the ALJ's decision. ALJ Harty's ruling went through the required five-step evaluation process and ultimately determined that Plaintiff suffered from several "severe" impairments, including a disorder of the lumbar spine, fibromyalgia and myofascial pain, obesity, major depressive disorder, anxiety disorder, and borderline personality disorder. ALJ Harty concluded that in light of all Plaintiff's ailments, Plaintiff had the residual functional capacity to perform sedentary work with limitations on the complexity of the work and necessity of interacting with coworkers and supervisors. The evidence ALJ Harty considered in making his ruling included medical opinion statements by three treating sources: Dr. Williams (provided June 20, 2013), Dr. Clough (provided June 4, 2014), and therapist Phillips (provided June 11, 2014). ALJ Harty concluded that, based on Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could still perform work that existed in significant numbers in the national economy. Therefore, Plaintiff was not under a disability during the relevant time period.

Given this unfavorable result, Plaintiff sought reconsideration of ALJ Harty's decision from the Appeals Council. The Appeals Council denied review on January 27, 2016, thereby making ALJ Harty's October 2014 decision the final decision of the Commissioner. Plaintiff never filed a civil action challenging the Commissioner's decision that Plaintiff was not disabled from May 8, 2012, to October 9, 2014.

**B.     Plaintiff's second application for disability insurance benefits**

In March 2016, Plaintiff filed a second application for disability insurance benefits. Plaintiff claimed an inability to work due primarily to back pain and mental impairments. Once again, Plaintiff's disability claim was denied initially and upon reconsideration, and Plaintiff sought a hearing with an ALJ.

ALJ Michael Burrichter presided over Plaintiff's hearing. There, Plaintiff testified that her pain was the primary reason she could no longer work. Plaintiff testified that her pain was usually a 4 or 5 on a pain scale of 1–10, but that sometimes it is much higher. She also reported difficulty maintaining concentration and remembering things. She stated that she occasionally performed some household chores, including light dusting, washing dishes, and folding laundry, but that she needed to take frequent breaks from standing or walking. She relied on her son who lived with her to do most of the cooking and cleaning. Plaintiff testified that she used the internet for shopping and social media; she also testified that she attended as many of her son's football games and wrestling matches as she could, but that she also missed a lot of them. She testified that because of her pain she could only walk about half a block before needing to rest.

During the hearing, the ALJ confirmed with Plaintiff's attorney that all exhibits for the ALJ's consideration had been submitted and the administrative record was complete. The ALJ also heard testimony from a vocational expert, who opined that Plaintiff, despite her medical conditions, would be able to perform some jobs that existed in the national economy.

On June 6, 2018, ALJ Burrichter issued a decision unfavorable to Plaintiff. ALJ Burrichter began his ruling by noting the limited scope of his ruling. Plaintiff's second application reiterated that Plaintiff was under a disability beginning in May 2012, but ALJ Harty previously ruled that Plaintiff was not under a disability from May 8, 2012, to October 9, 2014, and that ruling was

never successfully challenged. Because Plaintiff alleged a disability onset date that overlapped with the prior ALJ's ruling, ALJ Burrichter concluded that administrative res judicata precluded him from reconsidering whether Plaintiff was disabled before October 10, 2014. Furthermore, to obtain disability insurance benefits, the Social Security Act requires that Plaintiff prove she was under a disability on or before the date she was last insured, which in her case was December 31, 2015. Thus, ALJ Burrichter's ruling only addressed this narrow issue: whether Plaintiff was disabled within the meaning of the Social Security Act sometime between October 10, 2014 and December 31, 2015. To the extent the second ruling discussed evidence or events occurring before October 10, 2014, ALJ Burrichter stated that this was for background purposes only and did not evince an intent to reevaluate ALJ Harty's prior decision.

ALJ Burrichter then went through the five-step evaluation process, finding first that Plaintiff had not engaged in substantial gainful activity during the relevant time period. Next, ALJ Burrichter determined that through the date last insured, Plaintiff had the following severe impairments: degenerative disk disease and annular tear of the lumbar spine with history of surgical fixation, vertebral fractures, fibromyalgia obesity, depression, anxiety, borderline personality disorder, and alcohol use in early remission. But the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

ALJ Burrichter then determined that Plaintiff had the residual functional capacity:

[T]o perform sedentary work as defined in 20 [C.F.R. §] 404.1567(a), except [Plaintiff] can lift and carry up to ten pounds occasionally and lift or carry less than ten pounds frequently, stand and/or walk for two hours out of an eight-hour workday, and sit for six hours out of an eight-hour workday. [Plaintiff] should never climb ladders, ropes and scaffolds; and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. [Plaintiff] can occasionally use foot controls bilaterally. [Plaintiff] should never work at unprotected heights, with

moving mechanical parts, and in vibration; and can occasionally be exposed to extreme cold. [Plaintiff] is able to understand, remember, and carry out simple, routine and repetitive tasks in a work environment with no fast-paced production requirements involving only simple work-related instructions and decisions, and with only occasional judgment and work place changes. [Plaintiff] can occasionally respond to and have interaction with supervisors, coworkers and the general public.

ALJ Burrichter then determined that Plaintiff was unable to perform any past relevant work—specifically, as a tax preparer—because she was limited to unskilled work. She could, however, based on her age, education, work, experience, and residual functional capacity, perform jobs that existed in significant numbers in the national economy during the relevant time period. On this basis, ALJ Burrichter concluded that Plaintiff was not under a disability from October 10, 2014, through December 31, 2015.

The Appeals Council denied Plaintiff's request for review of ALJ Burrichter's decision, making the ALJ's 2018 ruling the final decision of the Commissioner. Plaintiff then filed this civil action requesting that the Commissioner's decision be reversed and her claim for social security disability insurance benefits be granted; alternatively, Plaintiff requests that the case be remanded for further consideration by the ALJ. Plaintiff also seeks attorney's fees and costs. Plaintiff argues that ALJ Burrichter erred in three ways: (1) in making a decision based on an incomplete record, (2) in failing to properly assess Plaintiff's pain and mental impairments, and (3) in failing to properly assess Plaintiff's RFC. Plaintiff has exhausted her administrative remedies, and this matter now ripe for the Court's consideration.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act ("the Act") which provides, in part, that the "findings of the Commissioner of Social Security as to any

fact, if supported by substantial evidence, shall be conclusive."[2] The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[3] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[4] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[5]

An individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[6] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[7]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[8] The steps are

---

[2] 42 U.S.C. § 405(g).

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[4] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[5] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

[6] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[7] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005)).

[8] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[9]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of impairments.[10] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from his impairments."[11]

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his past relevant work or whether he can generally perform other work that exists in the national economy, respectively.[12] The claimant bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work.[13] The burden then shifts to the

---

[9] *Barkley*, 2010 WL 3001753, at *2.

[10] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[11] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[12] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[13] *Lax*, 489 F.3d at 1084.

Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[14]

### III.     Analysis

**A.     Administrative record**

The Court first considers Plaintiff's argument that the ALJ reached a final decision based on an incomplete administrative record. Plaintiff argues that ALJ Burrichter disregarded certain medical opinions from her treating sources without identifying or discussing those opinions. Specifically, Plaintiff argues that ALJ Burrichter failed to include in the record the medical opinion statements of three of her treating sources: Tiffany Williams, M.D., John Clough, M.D., and therapist Jeffrey Phillips. ALJ Harty relied upon these three opinions when ruling on Plaintiff's first application for disability insurance benefits in 2014. In response, the Commissioner argues that the medical opinions are not relevant to the matter before the Court because they pre-date the relevant time period.

The Court agrees with the Commissioner that the omission of Dr. Williams, Dr. Clough, and Phillips' opinions do not constitute reversible error. Importantly, to invoke the Court's jurisdiction to review her claim, Plaintiff must bring a civil action within 60 days of the Commissioner's final decision being mailed to her.[15] Plaintiff complied with this requirement with respect to ALJ Burrichter's 2019 decision; she did not, however, bring a timely civil action challenging ALJ Harty's 2014 decision. Furthermore, ALJ Harty determined that Plaintiff was not disabled from May 8, 2012, to October 9, 2014, and in making this determination ALJ Harty

---

[14] *Id.*

[15] 42 U.S.C. § 405(g).

considered, discussed, and gave weight to the three medical opinions now in question. Whether ALJ Harty's ruling that Plaintiff was not disabled from May 8, 2012, to October 9, 2014 would have been affirmed by this Court had a timely civil action been filed is immaterial here. The Court has jurisdiction to review ALJ Burrichter's 2018 decision only.

The Court notes that Plaintiff requested that ALJ Burrichter reconsider ALJ Harty's decision and determine that Plaintiff was disabled prior to October 10, 2014. But ALJ Burrichter concluded that administrative res judicata prevented him from revisiting ALJ Harty's decision,[16] and Plaintiff provides no reason for the Court to conclude that ALJ Burrichter's reliance on this doctrine was misplaced. Because ALJ Burrichter was not reconsidering whether Plaintiff was disabled prior to October 10, 2014, it was unnecessary for ALJ Burrichter to rely on medical opinions describing Plaintiff's ability to function during that earlier time.[17]

Finally, the Court agrees with the Commissioner that if Plaintiff believed these medical opinions to be relevant to her second claim, she could have requested that ALJ Burrichter admit them as exhibits. Indeed, ALJ Burrichter confirmed with Plaintiff's counsel at the administrative hearing that no additional evidence needed to be added to the record.[18] Under these circumstances,

---

[16] *See* 20 C.F.R. § 404.957(c)(1) (stating an ALJ may refuse to consider an issue if a final decision has been previously made on that issue).

[17] The Court notes that Plaintiff argues that ALJ Burrichter did rely on these three opinion statements. Plaintiff cites the ALJ's statement that Plaintiff received temporary limitations after her lumbar surgery but that these were "impliedly temporary restrictions" that "appear during a period of exacerbation and immediately following corrective surgery." Although the ALJ could have been clearer in this regard, the Court reads the ALJ's statement about "a period of exacerbation" to be referring to Plaintiff's emergency room visit in April 2015, where Dr. McEnroe gave Plaintiff some movement restrictions (that were impliedly temporary). The Court also reads the statement about "corrective surgery" to be referring to Plaintiff's surgery in 2016 (not the 2014 surgery), after which Dr. Clough gave Plaintiff some movement restrictions (that were once again impliedly temporary).

[18] Doc. 5, attach. 1, at 43–44.

the Court holds Plaintiff has not demonstrated reversible error with regard to the administrative record.

**B.     ALJ Burrichter's assessment of Plaintiff's physical pain and mental impairments**

Plaintiff argues that ALJ Burrichter improperly assessed how her severe and chronic back pain, as well as her depression and anxiety, impaired her ability to work. In evaluating a claimant's claims of disabling pain, the Tenth Circuit mandates that the ALJ apply the three-part test articulated in *Luna v. Bowen*.[19] Under this framework, the ALJ must determine "(1) whether [Plaintiff] established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and [Plaintiff's] subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, [Plaintiff's] pain is in fact disabling."[20] In applying this framework, the ALJ should consider a non-exhaustive list of factors including the level and effectiveness of medication, attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility within the judgment of the ALJ, the motivation of and relationship between plaintiff and other witnesses and "the consistency or compatibility of nonmedical testimony with objective medical evidence."[21] The ALJ need not apply this framework formalistically as long as the substance is contained in the ruling.[22] Moreover, Social Security Ruling ("SSR") 16-3p states the ALJ must provide "specific reasons for the weight given

---

[19] 834 F.2d 161 (10th Cir. 1987); *see Brownrigg v. Berryhill*, 688 F. App'x 542, 545 (10th Cir. 2017) (recognizing requirement that ALJ follow the *Luna* framework).

[20] *Kellams v. Berryhill*, 696 F. App'x 909, 912 (10th Cir. 2017) (citation and quotations omitted).

[21] *Id.* at 913; 20 C.F.R. § 404.1529(c)(3)(i-vii) (2011).

[22] *Brownrigg v. Berryhill*, 688 F. App'x 542, 545 (10th Cir. 2017).

to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."[23]

Here, ALJ Burrichter concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms (satisfying the first two prongs of *Luna*). However, he also concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not supported by the objective medical evidence. Thus, the issue for the Court is whether ALJ Burrichter's assessment that Plaintiff's symptoms were not disabling—under the third prong of *Luna*—is supported by substantial evidence.[24] The Court will first consider the evidence as it relates to Plaintiff's physical pain; then the Court will consider Plaintiff's depression and anxiety.

*1.  Plaintiff's chronic pain*

ALJ Burrichter provided several examples of medical evidence from the record to support his conclusion that Plaintiff's back pain was not as severe as she claimed. Specifically, the ALJ stated that on exam Plaintiff's "range of motion was normal with no myalgia," that Plaintiff was "only occasionally positive for tenderness over the spinous process," that Plaintiff's "gait and station were normal," and that Plaintiff did not exhibit weakness or an inability to walk. Plaintiff argues that the ALJ's findings were "neither consistent with nor supported by the medical evidence set out in the record." In total, Plaintiff raises three objections to the ALJ's conclusions. First, Plaintiff takes issue that some of the medical exams the ALJ relied on took place during

---

[23] *Id*.

[24] *K.C. v. Saul*, 2019 WL 6726945, at *6 (D. Kan. 2019) (citing *Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015)) ("This court must affirm an ALJ's decision if substantial evidence supports that decision.").

appointments unrelated to her back pain. Second, she argues that even those exams contained evidence supporting Plaintiff's claim of back pain. Third, she argues that the ALJ failed to even consider all of the relevant evidence, specifically highlighting the results of an MRI ordered by her neurosurgeon, Dr. Clough, in late 2015. The Court considers each point of contention.

First, Plaintiff takes issue with the ALJ's reliance on her exams with Linden Collins, M.D., in February 2015, and Patricia Fitzgibbons, M.D., in May and October 2015. All three of these examinations were for reasons other than Plaintiff's back pain. Plaintiff saw Collins for a well-woman exam in February. She saw Fitzgibbons for a cyst in May. And she saw Fitzgibbons again in October to discuss a variety of issues.

The Court does not share Plaintiff's concern with regard to the ALJ's reliance on these examinations. Even though Plaintiff was not seeking treatment for her back pain, both doctor's included information from her visits that is relevant to her back pain. Specifically, both doctors stated that Plaintiff was negative for myalgias, and Fitzgibbons stated also that Plaintiff had a normal range of motion in her musculoskeletal system. Plaintiff does not contend that either doctor was unqualified to make these medical findings. Nor does she cite any authority that the ALJ could not rely on medical evidence simply because the primary purpose of the doctor's visit was unrelated to her back pain. The Court holds that the ALJ's reliance on these examinations was not error.

Next, the Court considers Plaintiff's contention that the ALJ's findings were contradicted by other evidence in the record. Here, Plaintiff points out that during the aforementioned exams with Collins and Fitzgibbons, both doctors noted that Plaintiff was positive for back pain. Additionally, in May, Fitzgibbons stated that Plaintiff was positive for arthralgias. In October, Fitzgibbons stated that Plaintiff was positive for back pain and myalgias, and she "exhibited

tenderness over spinous process in thoracic and lumbar vertebra." Similarly, when the ALJ stated that Plaintiff's gait and station were normal and exam findings revealed no weakness or inability to walk, he was relying on the notes of John McEnroe, M.D., who examined Plaintiff after she visited the emergency room for her back pain in April 2015. Plaintiff emphasizes that she visited the emergency room because her typical chronic pain had grown increasingly worse (and was radiating to her legs).

In essence, Plaintiff argues that the same medical records that contained evidence discounting Plaintiff's pain symptoms also contained information supporting her allegations of pain. Because conflicting evidence exists, Plaintiff argues that the ALJ's findings are unsupported. This argument is unpersuasive. As an initial matter: that Plaintiff suffers from back pain is not in dispute. But suffering from chronic back pain does not necessarily make a person disabled under the Social Security Act. The issue is whether that pain manifests itself in a way that prevents Plaintiff from performing the requirements of a job; other than acknowledging Plaintiff's back pain, the medical records in question provide very little information about the severity or limiting nature of Plaintiff's pain.

More importantly, the Court's role is to determine whether the ALJ's decision was supported by substantial evidence—the Court cannot make its own de novo ruling on the matter.[25] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] findings from being supported by substantial evidence."[26] Here, the ALJ reasoned that if Plaintiff's pain was as intense, persistent, and limiting as she claimed, that the medical evidence

---

[25] *Lax*, 489 F.3d at 1084 (10th Cir. 2007).

[26] *Id.* (citation and quotations omitted).

would have consistently demonstrated that upon examination. That the medical examinations contained some contradictory evidence, or could have been interpreted in another way, does not undermine the ALJ's reliance on and interpretation of those examinations.

Finally, Plaintiff argues that the ALJ erred in failing to discuss the results of Plaintiff's MRI in early 2016. Plaintiff's neurosurgeon, Dr. Clough, who performed Plaintiff's back surgery in 2014, ordered the MRI in December 2015 (shortly before Plaintiff's date last insured). The MRI, according to Dr. Clough, showed degenerative changes in the lumbar spine that collectively produced "moderate central canal stenosis with a central clumping [] on the nerve roots." Because of the MRI results, Dr. Clough performed a surgical decompressive laminectomy in May 2016. Following surgery, Plaintiff was restricted to no lifting, pushing or pulling more than 10 pounds; but two weeks after the surgery, Dr. Clough advised Plaintiff to increase activity as tolerated.

Plaintiff argues that the ALJ's failure to specifically discuss the MRI results constitutes reversible error. The Commissioner makes two arguments in response. First, the Commissioner argues that the ALJ was not required to discuss every piece of evidence in the record; second, the Commissioner argues that, "while the ALJ did not discuss the MRI itself, he did discuss the effects of Plaintiff's back impairment on her ability to function in a work environment—the relevant issue in the case."

The Court agrees with the Commissioner that the law does not require the ALJ to discuss every piece of evidence in the record.[27] However, "the record must demonstrate that the ALJ *considered* all of the evidence"[28] This means that, in addition to discussing the evidence

---

[27] *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) (stating that the ALJ is not required to discuss every piece of evidence).

[28] *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (emphasis added).

supporting his decision, the ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."[29]

Although ALJ Burrichter does not specifically address the results from her MRI, he does discuss the subsequent surgery to address the problems revealed by the MRI.[30] He also discussed that Plaintiff received some medical restrictions after her surgery, but that these restrictions "are impliedly temporary restrictions not intended to limit the claimant for more than a short period."[31] Those restrictions included not pushing, pulling, or lifting more than 10 pounds. But because these restrictions were temporary, the ALJ gave them no weight.[32] Based on these facts, the Court holds that the ALJ did not err in failing to specifically mention the MRI findings. He adequately addressed what effect Plaintiff's second surgery (which was directly related to that MRI) had on her ability to function.

### 2. *Plaintiff's mental impairments*

Plaintiff next argues that the ALJ's assessment that Plaintiff's depression and anxiety was not disabling is not supported by substantial evidence. The Court disagrees. The ALJ noted that Plaintiff was diagnosed with depression, anxiety, borderline personality disorder, and alcohol use in early remission. The ALJ also noted Plaintiff attended individual and group therapy and "that

---

[29] *Id.*

[30] Doc. 5, attach. 1, at 27 (stating that Plaintiff underwent a second back surgery to address her nerve pain).

[31] As discussed above, the Court notes that Plaintiff interprets the ALJ's discussion of her "lumbar surgery" and the "impliedly temporary restrictions" following that surgery to be in relation to her 2014 surgery. While the Court agrees that the ALJ could have been clearer on this issue, the Court reads the ALJ's decision to be in regard to Plaintiff's May 2016 surgery.

[32] The Court also notes that even these restrictions, if permanent, would not conflict with Plaintiff's ability to perform sedentary work. *See* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time.").

her mental status exams are grossly normal throughout the record."[33] The ALJ acknowledged that Plaintiff reported her memory and concentration had progressively worsened, that she was drowsy from her medications, and that she was suffering from migraines. The ALJ noted that Plaintiff's symptoms worsened based on various social stressors—the holidays, a breakup with a boyfriend, and conflicts with family members—and that in these situations she indicated a desire to self-harm, but that she generally kept that desire under control.

Furthermore, the ALJ noted that Plaintiff reported a general desire to not leave the house, but that she was involved in several dating relationships and attended her son's sporting events. The ALJ also noted that Plaintiff reported that she was making mistakes on clients' taxes, that she lost a client, and that she was having difficulty working with others. The ALJ, however, considered the fact that Plaintiff was continuing to perform some accounting work to be evidence that her depression was not disabling. The ALJ concluded that the record did not suggest that Plaintiff was unable to function in a work environment; nevertheless, to accommodate Plaintiff's reportedly diminishing memory and ability to concentrate, as well as her reported difficulty with social interactions, the ALJ limited Plaintiff to unskilled work with decreased social interaction.

Plaintiff does not dispute the ALJ's reliance on the record; rather, she simply asks the Court to draw different conclusions from the same evidence. This request goes beyond the Court's authority. The record was replete with evidence supporting the ALJ's finding that Plaintiff had the mental capacity to perform unskilled work. To the extent an alternative determination could

---

[33] Doc. 5, attach. 1, at 28.

have been made, it was the ALJ's prerogative to make that determination.[34] The Court holds that substantial evidence supported the ALJ's assessment of Plaintiff's mental health limitations.

**C.     Plaintiff's RFC**

Finally, Plaintiff argues that ALJ Burrichter erred in assessing her RFC. The ALJ determined that Plaintiff had the ability to perform unskilled sedentary work as defined in 20 C.F.R. § 404.1567(a). Here, Plaintiff simply reiterates the arguments already discussed in this opinion. For example, Plaintiff argues that the ALJ assessed Plaintiff's RFC based on an incomplete record—specifically, the medical opinions of Plaintiff's treating sources that were part of her first application for disability insurance benefits. Additionally, Plaintiff argues that in formulating Plaintiff's RFC, the ALJ wrongly discounted Plaintiff's allegations of physical pain and mental impairments. As discussed above, the Court finds no error in either regard. Accordingly, the Court holds that the ALJ did not err in assessing Plaintiff's RFC.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's request for costs and attorney's fees is **DENIED**.

**IT IS SO ORDERED**.

Dated this 2nd day of April, 2020.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[34] *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("[T]he record contains support for both the notion that [the plaintiff] has extreme deficiencies in concentration, persistence, and pace, and the notion that his mental limitations are not that severe. The ALJ was entitled to resolve such evidentiary conflicts and did so.").